IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 75-CR-26-3-F
No. 5:06-CV-23-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY R. MacDONALD, | ) | |
| Movant. | ) | |

In this court's order of September 21, 2011 [DE-180], the undersigned agreed with the Government's suggestion to bifurcate § 2255 evidentiary hearings on the "Britt" claim and the "DNA claim." *See* Order [DE-180] ("The Clerk of Court is DIRECTED to schedule and notice an evidentiary hearing solely on the Britt § 2255 claim ("the Britt Claim") during the week of October 31, 2011 . . . . "). At that time, the court did not perceive the contours of MacDonald's "DNA" claim." The court's comprehension of its task may have been stunted in part by confusion arising from the appellate court's wording in footnote 13, to the opinion vacating and remanding this court's November 2008, order [DE-150].[1]

During the past several weeks of carefully reviewing all pending motions in light of the Fourth Circuit's remand, the substantive and procedural issues concerning MacDonald's "DNA claim" have come better into focus. MacDonald's "DNA claim," itself, has dual bases:

(1) as an add-on freestanding DNA claim to MacDonald's successive § 2255 "Britt claim"

---

[1] Footnote 13 states, "In these circumstances, we need not reach MacDonald's alternative theories of jurisdiction with respect to the DNA claim: (1) that, by authorizing the DNA testing in 1997, this Court also implicitly authorized a subsequent § 2255 claim based on the test results; and (2) that no prefiling authorization is necessary, because the DNA claim is properly asserted under the Innocence Protection Act of 2004 (the "IPA"), 18 U.S.C. § 3600, rendering it free from the strictures of AEDPA. Nonetheless, on remand, the district court may consider in the first instance whether the IPA – a statute initially mentioned in this appeal by the government and subsequently invoked by MacDonald – is applicable to the DNA claim." *United States v. MacDonald*, 641 F.3d 596, 616 n.13 (4th Cir. 2011),

[DE-111], filed January 17, 2006, [2] concerning conclusions that he contends must be drawn from the 2006 results from AFDIL tests on "unsourced hairs," see [DE-122] [3] and [DE-176]; and

(2) as "Other Relief," [DE-176] which the court now understands to refer to the entirely separate alternative motion seeking an order permitting MacDonald to conduct new and

---

[2] The January 2006, successive § 2255 motion was based on MacDonald's "newly discovered evidence," consisting of the Jim Britt affidavit, and later supplemented by a new affidavit from Helena Stoeckley's mother. Two months later, the results of DNA testing, ordered by this court in 1997, were revealed on March 10, 2006, by the Armed Forces DNA Identification Laboratory ("AFDIL"). See [DE-119].

Armed with those DNA results, MacDonald filed a Motion to Add Additional Predicate [DE-122] to his successive § 2255 motion [DE-111], together with other motions and materials seeking to expand the record. The Government filed responses and its own motions, and the decades-old litigation was reignited. The complexity and volume of the new motions, compounded by a rather steep learning curve, delayed ruling on the motions filed after January 2006, until November 2008. See [DE-150]. Among the rulings contained in that order was denial of the Motion to Add Additional Predicate [DE-122]. See Order [DE-150], pp. 18-20, 46.

On appeal, the Fourth Circuit vacated and remanded the case, finding, *inter alia*, that "[i]n any event, MacDonald is entitled at least to the prefiling authorization for his DNA claim that we grant herein, as well as the more searching § 2255(h)(1) evaluation of such claim that the district court must conduct on remand." *United States v. MacDonald*, 641 F.3d 596, 617; 615-17 (4th Cir. 2011).

One day prior to the September 21, 2011, status conference that had been scheduled following remand from the appellate court, MacDonald filed a "Motion Pursuant to the Innocence Protection Act of 2004, 18 U.S.C. § 3600, For a New Trial based on DNA Testing Results and Other Relief," [DE-176]. The parameters and scope of that motion, frankly, were not immediately clear to the court.

MacDonald subsequently has explained that " [T]he 'Other Relief' sought was additional DNA testing under the IPA should the Court deny the motion for a new trial based on the results of the hair testing already conducted." MacDonald's Reply [DE-237], p. 2. The "DNA Testing Results" referred to in the title of that September 2011, motion [DE-176] were the 2006 AFDIL DNA test results that also were the subject of the March 2006, "Motion to Add Additional Predicate," [DE-122].

[3] This motion [DE-122] is entitled, "Petitioner's Motion to Add an Additional Predicate to his Previously Filed Motion under 28 U.S.C. Section 2255 to Vacate his Conviction – Namely Newly Discovered DNA Evidence Proving the Presence of Unsourced Hairs at the Crime Scene, Including One Such Hair Found with Blood Residue in a Critical Location, Under the Fingernail of Kristen MacDonald, and One Two Inch Hair with Root and Follicle Intact Found Under the Body of Colette MacDonald."

different DNA testing on biological samples already tested, as well as on items *not* previously tested, pursuant to the Innocence Protection Act of 2006 ("IPA"), 18 U.S.C. § 3600, *et seq*. This IPA motion is an alternative to the § 2255 motion, and is governed by a separate act of Congress which contains its own basis for federal jurisdiction and its own statutory limitations scheme.

For (relative) ease of reference herein, the court will call the first DNA claim the § 2255 "unsourced hairs" claim, and the second one "the IPA Motion."

### A. The § 2255 Unsourced Hairs Claim

MacDonald's § 2255 action, as it now is constituted on remand from the Fourth Circuit Court of Appeals, is comprised of:

(1) MacDonald's assertion that his "newly discovered evidence/Britt claim," consisting of affidavits produced by now-deceased former Deputy U.S. Marshal Jim Britt, the now-deceased mother of trial witness Helena Stoeckley, and others, including the now-deceased individual named Greg Mitchell, together with the universe of all evidence, admissible and inadmissible, whether proffered, admitted, or heard during the 1979 MacDonald trial or obtained at any time thereafter (including the 2006 AFDIL DNA test results), and

(2) MacDonald's free-standing contention that 2006 results of the AFDIL's DNA testing of certain "unsourced hairs" collected at the crime scene, in fact establish that intruders murdered MacDonald's wife and children.

Having the benefit now of substantial supplemental briefing with particular focus on the tangible scientific evidence at issue in both the § 2255 matter and the separate IPA motion, the court concludes that the issues for resolution demand a different logistical arrangement than had been anticipated. MacDonald's § 2255 unsourced hair claims, like his § 2255 "newly discovered evidence/Britt claims," will be the subject of the evidentiary hearing now scheduled to begin August 20, 2012. **No additional DNA testing is requested or required in order for the parties to present their evidence supporting and defending against those**

**claims**, nor can the court perceive any reason to bifurcate the evidentiary hearing on remand of the successive § 2255 claims (both the "unsourced hairs" aspect and the "new evidence/Britt" aspect) authorized by the Fourth Circuit Court of Appeals. At the court's request, counsel for the parties selected a date on which to begin the evidentiary hearing on the § 2255 claims, that being August 20, 2012, and that hearing date has been scheduled and noticed, and the court is prepared to go forward.

**To be clear, no additional DNA or other scientific testing of any physical evidence will be permitted prior to this court's conducting the evidentiary hearing MacDonald has requested and the court of appeals has mandated on his § 2255 motion.**

However, upon review of the memoranda and exhibits filed in relation to MacDonald's Motion [DE-176], it occurred to the court that MacDonald may at some future date complain that he was not afforded an opportunity to depose certain witnesses whose affidavits were appended to the Government's Response [DE-212] to the § 2255 component of MacDonald's Motion for New Trial [DE-176]. The court is not aware of any effort to date by MacDonald to depose or to seek to depose any Government witness.

Therefore, it hereby is ORDERED:

A. That § 2255 counsel for MacDonald and for the Government are DIRECTED to file their individual affidavits on or before **June 22, 2012**, stating:

    (1) whether they do or do not wish to take depositions[4] prior to commencement of the evidentiary hearing necessitated by the remand of the specific § 2255 claims; and, if so

    (2) the identities of the proposed deponents.

---

[4] **All counsel for MacDonald are DIRECTED to ensure that their client fully understands that this election in regard to pre-evidentiary hearing depositions is final and binding on MacDonald, and that any future claim he may file seeking relief on grounds of ineffective assistance of counsel in relation to that election *will* summarily be dismissed.**

4

B. If *either* or *both* parties seek to take deposition(s), then counsel for the parties shall confer and file, on or before **July 6, 2012,** a *joint* proposed schedule for

(1) completing discovery, and

(2) the evidentiary hearing, taking into account time necessary for transcription, if any, and for pre-hearing preparations and pre-hearing conference; or

C. If *neither* party elects to engage in depositions, then they shall so notify the court on or before **June 22, 2012,** and immediately thereafter shall engage in preparations, adhering to the procedures outlined in Local Rule 16.1 to the extent applicable,[5] for a pre-hearing conference to be conducted on **Friday, August 10, 2012**, at **9:00 a.m.**, with the evidentiary hearing to commence as scheduled at **10:00 a.m.** on **August 20, 2012**.

The evidentiary hearing necessary for the court to perform the "more searching inquiry," will include *both* aspects of the § 2255 claim as remanded by the Court of Appeals – the "newly discovered evidence/Britt claim" aspect *as well as* the add-on "unsourced hairs" aspect. MacDonald, who bears the burden of proving his § 2255 claims, will present his proof first. Although most, if not all, of MacDonald's "newly discovered evidence/Britt claim" "fact" witnesses now are deceased, there may be other evidence he wishes to present. Of course, the

---

[5] For instance, strict compliance with Rule 16.1(c) is not appropriate insofar as it requires re-copying documents already in the record and *correctly identified for easy reference.* Counsel are advised, however, that the court may require each party to prepare notebooks for use during the evidentiary hearing by the court and the law clerk, containing all exhibits and documentary references, correctly and consistently numbered and legible.

Objections based on authenticity or admissibility of exhibits may be lodged but will not be resolved, in light of the court's obligation to consider " 'all the evidence, including that alleged to have been illegally admitted [and that] tenably claimed to have been wrongly excluded or to have become available only after the trial. . . . Or, to say it another way, the 'court must consider "all the evidence," old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under [evidentiary rules]' . . . 'giv[ing] due regard to any unreliability of' the evidence . . . ." *MacDonald* 641 F.3d at 612 (internal citations omitted.). The court also " 'may have to make some credibility assessments. ' " *Id.* at 612-13 (citation omitted).

5

Government is entitled to present whatever relevant evidence[6] it has in response to the proffered affidavits, depositions, live witnesses, and the arguments arising therefrom.

Similarly, MacDonald will present the testimony of his own expert witnesses for factual support of his § 2255 "unsourced hairs" claim that the 2006 AFDIL test results demonstrate that intruders, in fact, committed the murders. The Government, of course, will cross- examine those witnesses and elicit testimony from its own forensic witnesses, including those whose affidavits were submitted in the Government's Response [DE-212] to the § 2255 aspect of MacDonald's motion [DE-176] concerning the "newly discovered evidence/Britt claim," and whom MacDonald may depose according to the directions contained herein.

This § 2255 litigation is, of course, civil in nature; thus, the hearing will be conducted in accordance with the FEDERAL RULES OF CIVIL PROCEDURE *to the extent* they are not inconsistent with more specific § 2255 Rules. Significantly, and as the parties certainly are well aware, this evidentiary hearing *may* include hearsay, as well as previously excluded evidence and evidence not previously mentioned, evidence that is admissible and that which is inadmissible, if it is part of the "evidence as a whole" as that term is defined by controlling law. *See MacDonald*, 641 F.3d at 614.

### B. The IPA Motion

On the eve of the September 21, 2011, status conference, MacDonald through separate counsel, Christine Mumma, Director of the North Carolina Center on Actual Innocence, filed the "Motion Pursuant to the Innocence Protection Act of 2004, 18 U.S.C. § 3600, For a New Trial based on DNA Testing Results and Other Relief," [DE-176]. The "Other Relief" MacDonald seeks is an order permitting him to conduct "Y-STR" and "Touch" DNA testing on "the physical evidence to identify biological evidence, and to conduct further and expeditious DNA testing of additional biological evidence that the defendant will identify after inspection . . . . " Motion

---

[6] *See supra*, note 5.

[DE-176], ¶ 9 (citation omitted). According to Ms. Mumma's Affidavit appended to the IPA Motion [DE-176], Y-STR and Touch DNA testing could prove "very probative." She explained,

> 9. Items collected into evidence which would be significant for testing include the weapons used to commit the MacDonald murders (piece of wood used as a club, two paring knives, and an ice pick); fingernail scrapings taken from the victims; pieces from a surgical glove presumably worn by the perpetrator; and blood drops and smears taken from areas where it appears the perpetrator touched things or may have bled while moving through the home.

Mumma Affidavit, Exh. 1 to [DE-176] ¶ 9.

Initially, MacDonald argued that his 1997 motion for DNA testing [DE-46], which ultimately produced the 2006 AFDIL test results [DE-119], should be considered as his timely IPA motion pursuant to § 3600. *See* Motion [DE-176], ¶ 5 ("Defendant's 1997 request for DNA testing (while the [AFDIL/AFIP] testing was being conducted in 2004) constitutes a request for relief under the IPA"). Of course, the IPA was not even enacted until 2004, and MacDonald now concedes that "his 1997 Motion for DNA Testing did not constitute a request for testing under the IPA." Reply [DE-237] at p. 6.

The only suggestion of a theory upon which MacDonald contends his alternative IPA motion is timely under the terms of that Act is contained in a single sentence, lacking citation, declaring: "The results [of the 1997 testing] constitute additional evidence to be considered in conjunction with MacDonald's assertion of actual innocence, rebutting a presumption of untimeliness under the IPA." *Id.* at p. 1. Presumably, he is referring to § 3600(a)(10)(B)(iii) concerning a rebuttable presumption against timeliness, which itself may be rebutted upon the court's finding, "(iii) that the applicant's motion is not based solely upon the applicant's own assertion of innocence and, after considering all relevant facts and circumstances surrounding the motion, a denial would result in a manifest[7] injustice."

---

[7] "Manifest" is defined at § 3600(a)(10)(C)(ii) as meaning "that which is unmistakable, clear, plain, or indisputable and requires that the opposite conclusion be clearly evident."

MacDonald's has not explained *how* his "assertion of actual innocence," which is the gravamen of his successive *§ 2255 motion*, is likely to be ultimately dispositive of timeliness issues concerning this court's jurisdiction over his separate IPA motion. Although the Government has advanced a compelling argument in opposition to the IPA motion and briefing thereon is complete, the court nevertheless declines, at this point, to address the viability of the "alternative" IPA motion.

**SUMMARY**

The parties are ORDERED to fully and carefully review and comply with the directions and orders contained herein.

SO ORDERED.

This, the 8th day of June, 2012.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge