UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 3:75-cr-00026-BO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JEFFREY MACDONALD | REPLY TO GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

The Government's argument that the Court lacks legal authority to grant Dr. MacDonald's motion fails, and the Government's opposition does not overcome the substantial evidence weighing in favor of the Court granting Dr. MacDonald's motion for compassionate release.

## I. THIS COURT HAS LEGAL AUTHORITY TO CONSIDER DR. MACDONALD'S MOTION FOR COMPASSIONATE RELEASE.

### a. The Government's Argument That The Court Lacks Authority To Grant Compassionate Release In This Case Fails.

Dr. MacDonald moved for relief under 18 U.S.C. § 3582(c)(1)(A), which begins, "*in any case* . . . the court, . . . upon motion of the defendant . . . may reduce the term of imprisonment . . . ." (Emphasis added). The government argues that, notwithstanding this unambiguous statutory language, this Court lacks legal authority to grant Dr. MacDonald's Motion under 18 U.S.C. § 3582(c)(1)(A). Gov. Resp. [DE 413] at 8-16. The Court should reject the government's argument in favor of a plain language reading of the statute under which "in any case" means "in every case" and should find that § 3582(c)(1)(A) applies to this case.

The government argues that Dr. MacDonald is not subject to the "in any case" language of § 3582(c)(1)(A) and is instead subject only to the "old law" of 18 U.S.C. § 4205(g) (the parole system) because the criminal offenses for which Dr. MacDonald was convicted and sentenced occurred before November 1, 1987. *See* [DE 413] at 9. The government's argument appears to

be that, because a prior version of § 3582(c) was made effective on November 1, 1987, every amendment to § 3582(c) must be effective only to cases arising from conduct that occurred after November 1, 1987. This argument fails for at least five reasons.

**First**, the reason Congress made the prior version of § 3582(c) effective November 1, 1987 was to protect defendants from an *ex post facto* problem that would have been created a retroactive effective date, *see United States v. Stewart*, 865 F.2d 115, 117–18 (7th Cir. 1988), whereas no *ex post facto* problem is created by retroactively applying the updated compassionate release statute at issue, § 3582(c)(1)(A). The *ex post facto* problem existed when § 3582(c) was originally enacted because the new law (which created guideline-based sentencing) subjected defendants to harsher punishments than the old law that was abolished and replaced. But the expanded compassionate release statute at issue here, § 3582(c)(1)(A), does not expose defendants to longer terms of imprisonment; it gives them an opportunity for a sentence reduction. Thus, the enactment at issue in this case poses no *ex post facto* problem. Therefore, there is no basis for disregarding the plain language of the statute to prevent retroactive application of the expanded compassionate release statute.

**Second**, failing to apply the new version of § 3582(c)(1) to all cases would thwart Congress' intent in passing the First Step Act of 2018 because the plain language of the statute states that the subsection applies to "any case." Of course, "when the meaning of the statute's terms is plain, [the courts interpretative role] is at an end," for "[t]he people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *See Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1749 (2020); *see also BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to "presume that [the] legislature says in a statute what it

means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (internal citations and quotations omitted).

**Third**, the legislative history and express congressional intent of the First Step Act of 2018 also shows that Congress intended the new compassionate release statute to apply to every case. The Senate Report accompanying the act notes that the purpose of the new compassionate release authority is to "keep[] the sentencing power in the judiciary where it belongs [and to] permit[] later review of sentences in particularly compelling cases." S. Rep. No. 98-225, at 121. These purposes are not served by prohibiting the court from granting compassionate release for the BOP's most elderly inmates, as the Government suggests.

In other words, there is no obvious reason for Congress to make a distinction between "old law" and "new law" defendants in the amended compassionate release regime. If anything, compassionate release would be most applicable to the oldest inmates (*i.e.*, those with offenses before November 1, 1987). It was clearly the intent of Congress that the First Step Act should apply to all inmates regardless of when their offense occurred. To interpret the compassionate release statute otherwise would be to interpret the statute in a way that assumes Congress, in attempting to expand the release of elderly and long-serving inmates, excluded the most elderly and the longest serving inmates. Such an interpretation is both illogical and unhumanitarian. Congress wanted to avoid the costs and burden of an aging inmate population and prevent correctional facilities from turning into nursing homes,[1] and thus, an interpretation of the First

[1] *See* 164 Cong. Rec. H10,339, H10,361 (daily ed. Dec. 20, 2018) (statement of Rep. Goodlatte) ("We want to punish repeat offenders, but we do not want our Federal prisons to become nursing homes.").

Step Act which excludes the oldest and longest serving inmates is at odds with the intent of the legislators and would frustrate the purpose of the statute.[2]

**Fourth**, the canon of statutory interpretation that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Russello v. United States*, 464 U.C. 16, 23 (1983), supports finding that the new compassionate release statute applies to every case, including "old law" cases—that is, cases related to offenses committed before November 1, 1987.

Section 102(b) of the First Step Act of 2018, which amended 18 U.S.C. § 3624, includes the following applicability language: "The amendments made by this subsection . . . shall not apply with respect to offenses committed before November 1, 1987." On the other hand, Section 603 of the First Step Act of 2018, which amended the compassionate release statute at issue here, includes no such applicability language.

Limiting applicability of § 102(b) to "new law" cases makes sense because § 102(b) changed the calculation for good time credit. "Old law" inmates do not receive such credit, so failure to limit applicability of the amendment to "new law" cases would create a substantial administrative problem for BOP. There is no such administrative problem created by applying the new compassionate release statute to old law inmates.

**Fifth**, a recently introduced Senate bill supports that Congress intended for the new compassionate release statute to apply to every case, including "old law" cases. A bill drafted by

---

[2] *See* Antonin Scalia and Bryan Garner, Reading Law: The Interpretation Of Legal Texts (2012) at 56 (a resolution that succeeds in achieving a statute's purpose "should be favored over the resolution that frustrates its purpose.").

the same Senators who drafted the First Step Act (Senators Durbin and Grassley), includes a "Compassionate Release Technical Correction" that would insert after "any case" in 18 U.S.C. § 3582(c)(1)(A) the words "including, notwithstanding any other provision of law, any case involving an offense committed before November 1, 1987."[3] This language shows that Congress intended for the statutory language "in any case" to mean "in every case."

**b. Courts Have Granted Relief Under § 3582 to "Old Law" Inmates Since Enactment of the First Step Act of 2018.**

Courts have indeed granted "old law" inmates compassionate release pursuant to § 3582(c)(1)(A). *See, e.g.*, *United States v. Rice*, 83 CR. 150-3 (LGS), 2020 WL 4505813, at *5 (S.D.N.Y. Aug. 5, 2020) (granting compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, to defendant charged on September 27, 1983 and convicted on November 21, 1983); *United States v. Torres*, 87-Cr-593 (SHS) (S.D.N.Y. Jun. 1, 2020) (granting Jorge and Victor Torres' motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) after serving 33 years for offenses related to heroin conspiracy in early 1980's and arrest in 1987); *United States v. Fisher*, 83-Cr-150 (PAC) (S.D.N.Y. Oct. 9, 2020) (granting motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to defendant who served 38 years for conviction imposed in 1984). In sum, many "old law" inmates have been granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act.

* * *

To be clear, there is no dispute that the Sentencing Reform Act of 1984 applied only to inmates sentenced for offenses occurring after November 1, 1987—because the act would

[3] COVID-19 Safer Detention Act of 2020, S. 4034, 116th Cong.

otherwise have violated the *ex post facto* provision of the Constitution. But the First Step Act of 2018 is a separate act, and its plain language, its purpose, and canons of statutory construction show that the updated compassionate release authority within this act applies to all inmates.

Thus, this Court has authority to grant Dr. MacDonald's request for compassionate release.

## II. DR. MACDONALD HAS ESTABLISHED EXTRAORDINARY AND COMPELLING CIRCUMSTANCES WARRANTING RELIEF.

### a. The Government Has Conceded that Dr. MacDonald Has Established Extraordinary and Compelling Circumstances Warranting Relief.

The government has acknowledged that Dr. MacDonald's "chronic kidney disease is sufficient to satisfy the 'extraordinary and compelling reasons' inquiry under 18 U.S.C. § 3582(c)(1)(A)(i)." Gov. Resp. [DE 413] at 17. Thus, based on his chronic kidney disease and the other reasons discussed in Dr. MacDonald's Motion for Compassionate Release, [DE 403], Dr. MacDonald has established extraordinary and compelling reasons warranting compassionate release under § 3582(c).

According to the government, the remaining inquiry for this Court is whether after considering the § 3553(a) factors, Dr. MacDonald is a danger to the community and therefore, a sentence reduction is not warranted in this case. In support of the government's argument that the need for the sentence to promote respect for the law and provide just punishment weighs against Dr. MacDonald's request for compassionate release, the government points out that "MacDonald has always denied guilt" and if he "were released early, without ever acknowledging his guilt . . . public confidence in the administration of justice will be further undermined." [DE 413] at 25. The government's argument – in essence – is that if we keep those who have maintained their innocence for 50 years in prison it will somehow give the public

greater confidence in the administration of justice and therefore, we should disregard any plea of innocence and assume everyone is guilty of the crime for which they are charged or convicted to increase the public's confidence in the administration of justice. Such an argument is entirely contrary to our administration of justice and only serves to undermine the public's confidence in our justice system at the expense of easing the consciouses of those who have and who continue to refuse to accept a defendant's plea of innocence to the crimes for which he was convicted and sentenced.

The government further argues that the kinds of sentences available also support denying Dr. MacDonald's request for compassionate release. Specifically, the government contends that "the only congressionally authorized sentences for murder in the first degree in violation of 18 U.S.C. § 1111 have been life imprisonment or death." [DE 413] at 28. The government suggests that "to release MacDonald early when he received, and is serving, the only congressionally authorized sentence for his crime short of death" would not serve the purposes of federal sentencing.

However, numerous courts have reduced sentences of life imprisonment pursuant to the compassionate release statute,[4] notably in cases in which the defendants served far less time than

---

[4] *United States v. Jaen*, 91-cr-814, ECF No. 505 (S.D. Fla. July 6, 2020) (reducing life sentence to time served for 81-year old convicted of 600-lb cocaine distribution and assault on federal officer); *United States v. Rice*, Case No. 1:03-cr-441 (D.D.C. July 8, 2020) (reducing life sentence to approximately 16.5 years); *United States v. Jenkins*, No. 4:93-cr-11 (W.D. Mich. June 12, 2020) (reducing life sentence based on age and multiple health conditions); *United States v. Naranjo*, No. 93-cr-418 (D.D.C. May 11, 2020) (granting compassionate release reducing life sentence to time served due to age and health conditions placing him at risk for COVID); *United States v. Smith*, 6:04-cr-2002 (N.D. Iowa July 10, 2020) (reducing mandatory life sentence to time served based on health conditions and COVID after serving approximately 16 years of sentence); *United States v. Rodriguez-Barron*, Case No. 2:94-cr-00559-GW (C.D. Cal. Jul. 9, 2020) (reducing then mandatory life sentence based on health conditions and COVID); *United States v. Barron*, 2:94-559-GW, Dkt. 424 (C.D. Cal. Jul. 10, 2020) (reducing life sentence based on age and health conditions); *United States v. Parker*, Case No. 2:98-cr-00749-CAS-1, 2020 WL 2572525, at *14 (C.D. Cal. May 21, 2020) (reducing life sentence to approximately 22 years, time served for 65-year-old defendant experiencing deteriorating health and particularly susceptible to COVID-19 due to several conditions resulting from

Dr. MacDonald. Therefore, Dr. MacDonald submits that a sentence reduction in this case would be consistent with the purposes of both federal sentencing and the compassionate release statute.

## **CONCLUSION**

Because the Court has legal authority to grant Dr. MacDonald's request, and because Dr. MacDonald has established extraordinary and compelling reasons for compassionate release and the § 3553(a) factors support his request, the Court should grant this motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

---

the aging process); *United States v. Barrenechea*, Case No. 92-cr-00403-MMC-3, 2020 WL 2315638, at *1 (N.D. Cal. May 7, 2020) (granting compassionate release and reducing life sentence to 332 months time served for defendant with increased risk of illness from COVID-19); *United States v. Williams*, No. 3:04-cr-00095-MCR-CJK, ECF No. 91 (N.D. Fla. Apr. 1, 2020) (granting compassionate release of defendant who served 15 years of life sentence to aging prisoner with medical issues making him vulnerable to COVID-19); *United States v. Smith*, 2020 WL 2844222 (N.D. Iowa June 1, 2020) (reducing life sentence based on lung cancer and other medical conditions); *United States v. Kubinski*, No. 3:93-cr-28 (EDNC May 13, 2020) (reducing life sentence based on age and deterioration in physical health); *United States v. Perez*, No. 6:88-cr-10094 (D. Kan. March 11, 2020) (reducing life sentence based on age and rehabilitation); *United States v. Curtis*, No. 03-cr-533, 2020 WL 1935543 (D.D.C. Apr. 22, 2020) (granting compassionate release to a 43-year-old defendant who had served 17 years of life sentence for sex trafficking children based on his advanced MS, Covid-19, and changes to the career offender guideline); *United States v. Plunk*, No. 94-cr-36-TMB (D. Alaska Apr. 9, 2020) (granting compassionate release to prisoner serving two life sentences for drug offenses based on medical conditions and vulnerability to the COVID-19 pandemic due to age); *United States v. Regas*, No. 391CR00057MMDNA1, 2020 WL 2926457, at *4 (D. Nev. June 3, 2020) (reducing life sentence due to age and vulnerability to COVID-19*); United States v. Ledezma-Rodriguez*, No. 3:00-cr-71 (S.D. Iowa July 14, 2020) (mandatory life from two 851s would no longer apply and finding sentencing disparity combined with rehabilitation, COVID-19, and a dependent family member justified release).

Respectfully submitted, this the 2nd day of December, 2020.

CHESHIRE PARKER SCHNEIDER, PLLC

/s/ Hart Miles
Hart Miles
N.C. State Bar # 23342

/s/ Elliot Sol Abrams
Elliot Sol Abrams
N.C. State Bar # 42639

/s/ Catherine S. Brown
Catherine S. Brown
N.C. State Bar # 50598

P. O. Box 1029
Raleigh, NC 27602
Tel: (919) 833-3114
Fax: (919) 832-0739
hart.miles@cheshirepark.com

GAMMON, HOWARD, & ZESZOTARSKI, PLLC

/s/ Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
N.C. State Bar # 21310
P.O. Box 1127
Raleigh, NC 27602
(919) 521-5878
jzeszotarski@ghz-law.com
*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, she electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the United States.

This the 2nd day of December, 2020.

/s/ Catherine S. Brown
Catherine S. Brown
CHESHIRE PARKER SCHNEIDER, PLLC