IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 3:75-CR-00026-1BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY MACDONALD | )<br>)<br>)<br>)<br>)<br>)<br>) | **NOTICE OF REFUSAL OF COVID-19 VACCINATION AND SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, respectfully files this notice apprising the Court that the Defendant was offered a COVID-19 vaccination on March 2, 2021 and refused it. In light of this new development, the United States hereby supplements its prior response in opposition to Defendant's Motion for Compassionate Release as follows:

1. Jeffrey MacDonald moved for compassionate release under 18 U.S.C. § 3582(c) on November 11, 2020. In asserting that "extraordinary and compelling" reasons justified his release under § 3582(c)(1)(A)(i), MacDonald relied *exclusively* on his "[v]ulnerability to COVID-19" given certain risk factors that he identified, including chronic kidney disease, a history of skin cancer, and hypertension. *See* D.E. 403, at 9–16.

2. In the government's response, the government conceded that because the Centers for Disease Control ("CDC") had identified chronic kidney disease as representing a significant risk factor for severe illness were MacDonald to contract

COVID-19, MacDonald had satisfied § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" requirement. *See* D.E. 413, at 9.[1] The government otherwise opposed MacDonald's motion on jurisdictional and substantive grounds, including on the ground that § 3582(c) does not apply to MacDonald in the first place. *See* D.E. 413.

3. In December 2020, after the filing of MacDonald's motion for compassionate release, the United States Food and Drug Administration ("FDA") issued Emergency Use Authorizations for two COVID-19 vaccines—one produced by Pfizer-BioNTech and one produced by Moderna. Both of these vaccines utilize mRNA technology. Thus, rather than being injected with "live" virus, a patient is injected with a lab-made viral genetic code designed to stimulate an immune response that is effective in fighting off COVID-19.

4. On January 4, 2021, the Bureau of Prisons ("BOP") updated its clinical guidance regarding the COVID-19 vaccine. *See* BOP Clinical Guidance, *COVID-19 Vaccine Guidance*, https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (last accessed March 8, 2021) ("Guidance"). The purpose of the Guidance is to "provide direction on use of the COVID-19 vaccine for all adults who meet the criteria established by the Bureau of Prisons ('BOP'), with guidance from the Advisory Committee on Immunization Practices (ACIP) and the Centers for Disease Control and Prevention (CDC)." *Id.* The goal of the Guidance is to "promote vaccine use as a means of controlling pandemic transmission of SARS-CoV-2 (the virus that causes

[1] The government did not concede extraordinary and compelling reasons based on MacDonald's history of skin cancer or hypertension. *See* D.E. 413 at 19–20 n.8.

COVID-19) and reducing morbidity and mortality from this infection." *Id.* Developing and executing a plan for the vaccination of inmates and BOP staff is one of the many significant measures BOP has been and continues to undertake to protect the health of the inmates in its charge.

5. On or about January 11, 2021, as BOP was in the process of rolling out its vaccination effort, MacDonald was tested for COVID-19 using a rapid antigen test, which yielded a positive result. MacDonald was not experiencing any symptoms at the time and available medical records indicate that he has never demonstrated symptoms associated with COVID-19.

6. On March 3, 2021, in accordance with BOP's vaccination guidance, MacDonald was offered the Moderna COVID-19 vaccine. MacDonald declined the vaccine. *See* Vaccine Refusal and Immunization Record (**Exhibit 1**).

7. The government is not aware of any evidence that MacDonald falls within the categories of individuals for whom the Moderna vaccine is medically contraindicated or even for whom precautions are indicated by the CDC Clinical Considerations, as adopted by BOP's vaccination guidance. *See* Guidance, at 7–9; *see* CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States*, https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-consid erations.html (hereafter, "CDC Clinical Considerations"). The only medical contraindications identified by the CDC are severe allergic reactions to the vaccine or its components, and there is no evidence that MacDonald suffers from such allergies. *See* Guidance at 7. As for precautions, available medical records

indicate that MacDonald has never had a symptomatic case of COVID-19, has never received monoclonal antibody therapy, was not administered another vaccine within 14 days before being offered the Moderna vaccine, did not have an acute non-COVID illness when offered the Moderna vaccine, and does not have a history of allergic reactions to other vaccines, anaphylaxis, or other significant allergies—the latter of which simply requires a monitoring period after administration of the vaccine in accordance with the Guidance. *See id.* at 8. Moreover, the CDC has stated that "[d]ata from clinical trials indicate that the currently authorized COVID-19 vaccines can be given safely to people with evidence of a prior SARS-CoV-2 infection" and that "[p]eople should be offered vaccination regardless of history of prior symptomatic or asymptomatic SARS-CoV-2 infection." CDC Clinical Considerations.

8. In fact, medical associations support vaccination via mRNA vaccines such as the Moderna vaccine for individuals like MacDonald who suffer from chronic kidney disease ("CKD"), given that the perceived benefits of vaccination are significant in light of the known risks of COVID-19 infection to people with CKD. *See, e.g.*, National Kidney Foundation, *Vaccines, Kidney Disease, & COVID-19*, https://www.kidney.org/coronavirus/vaccines-kidney-disease (last accessed March 8, 2021) ("Most doctors agree that the benefits of the vaccine for people with chronic kidney disease at any stage, those on dialysis, and kidney transplant recipients are much greater than the risk of serious disease or complications from COVID-19."); *see also* Windpessl, M., Bruchfeld, A., Anderson, HJ et al., *COVID-19 Vaccines and Kidney Disease*, NATURE REV.: NEPHROLOGY (Feb. 8, 2021), *available at*

https://www.nature.com/articles/s41581-021-00406-6 ("Based on the available data for inactivated vaccines such as those against influenza, one can reasonably assume that the safety of current SARS-CoV-2 candidate vaccines does not differ between individuals in the various registration studies and the CKD population.").

9. Likewise, although MacDonald has a history of skin cancer, the available medical records do not indicate that he has undergone any kind of immunosuppressant therapy that would render the Moderna vaccine inappropriate. Notably, although Moderna generally excluded individuals with cancer from its vaccination clinical trials, it *allowed* individuals with basal cell and squamous cell carcinoma of the skin—the cancer for which MacDonald has historically been treated—to participate. *See* Safety and Immunogenicity Study of 2019-nCoV Vaccine (mRNA-1273) for Prophylaxis of SARS-C-V-2 Infection (COVID-19), *available at* https://clinicaltrials.gov/ct2/show/NCT04283461?term=vaccine&cond=covid-19&draw=2 ("Exclusion Criteria" included "[o]ngoing malignancy or recent diagnosis of malignancy in the last five years *excluding* basal cell and squamous cell carcinoma of the skin, which are allowed" (emphasis added)).

10. At this point, like many Americans, MacDonald has tested positive for COVID-19 without displaying any symptoms. Furthermore, *unlike* most Americans, he has been offered a vaccine—a vaccine that in clinical trials boasted an efficacy rate of 94.1% effective at preventing laboratory-confirmed COVID-19 illness in people who received two doses, *see* CDC, *Information about the Moderna COVID-19 Vaccine*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/differentvaccines/Moderna.html,

and **<u>100%</u>** effective at preventing symptomatic COVID-19 infection in his age category (*i.e.*, adults at or over age 75), *see* Sara Oliver, MD, MSPH, *EtR Framework: Moderna COVID-19 Vaccine*, at 20, *available at* https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2020-12/slides-12-19/04-COVID-Oliver.pdf.

11. Although MacDonald is free to refuse the COVID-19 vaccine, his doing so nevertheless eliminates the only "extraordinary and compelling" reason he has offered warranting a sentence reduction—the risk of severe illness presented by COVID-19. As multiple courts around the country have held, MacDonald cannot argue that his underlying health condition (chronic kidney disease) diminishes his ability to provide self-care against serious injury or death as a result of COVID-19 when he has been offered and refused the very measure that would best mitigate the COVID-19 risk. *See, e.g.*, *United States v. McBride*, No. 5:19-cr-00007-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Although Defendant's diabetes could qualify as an extraordinary and compelling reason for granting compassionate release if it substantially diminished his ability to provide self-care against serious injury or death from COVID-19 within the environment of a correctional facility, it does not qualify as such in this instance. Defendant rejected the COVID-19 vaccine. . . . Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."); *United States v. Gonzalez Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to

protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."); *United States v. Williams*, No. CR-17-01279-001-PHX-DLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (Defendant's refusal of vaccine "is inconsistent with his position that he believes he is at increased risk from the virus").

12. Moreover, MacDonald has already tested positive for COVID-19, which resulted in *no* symptomatic illness, much less a severe case. As one court has put it: "[t]he hypothetical possibilities of reinfection and developing severe complications if reinfection occurs—where such complications did not develop with the first infection—are too remote to satisfy the extraordinary and compelling circumstances test." *United States v. Jones*, No. 5:11-CR-99-FL, ECF No. 319, at 8 (E.D.N.C. Oct. 19, 2020) (collecting cases). And to the extent MacDonald believes his positive test was a false positive and that he remains at risk of severe illness, his refusal to get the vaccine undercuts any argument that his ongoing risk justifies release; to the extent any risk remains, he has voluntarily assumed it by rejecting the risk-mitigating measure offered to him.

13. A district court reached the same conclusion on similar facts in *United States v. Lohmeier*, No. 12 CR 1005, 2021 WL 365773 (N.D. Ill. Feb. 3, 2021). There, the defendant had a positive COVID-19 test, but an asymptomatic case, and refused the COVID-19 vaccine. *Id.* at *2. The court concluded that the fact that the defendant was infected "substantially reduces his risk of infection." *Id.* "And even were that

not the case," the court explained, "the Court would not be inclined to find compelling circumstances for reducing Mr. Lohmeier's sentence based on concern about the risk of severe health impairments should he again contract COVID-19 when he has declined to take all available precautions against infection—specifically vaccination." *Id.* "In declining vaccination (twice)," the court concluded, "Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." *Id.*

14. Given the foregoing, and to the extent the Court determines that § 3582(c) applies to an old-law inmate like MacDonald in the first place, the government hereby withdraws its earlier concession that the current circumstances of the COVID-19 pandemic amount to an "extraordinary and compelling" circumstance under § 3582 in MacDonald's case. MacDonald should not be able to rely on the potential risks associated with a temporary pandemic to justify his release from prison, only to refuse the vaccine that substantially reduces—and just about eliminates—those risks in the first place.

[*Remainder of Page Left Intentionally Blank*]

Respectfully submitted this 9th day of March, 2021.

G. NORMAN ACKER, III
Acting United States Attorney

By: /s/ John E. Harris
JOHN E. HARRIS
Attorney for United States of America
Assistant United States Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
Email: john.harris5@usdoj.gov
N.C. Bar No. 49253

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 9th day of March, 2021, served a copy of the foregoing upon the below-listed party by electronically filing the foregoing with the Court on this date using the CM/ECF system or placing a copy in the United States Mail to the following:

Hart Miles
hart.miles@cheshirepark.com

Elliot Sol Abrams
elliot.abrams@cheshirepark.com

Catherine S. Brown
catherine.brown@cheshirepark.com

Cheshire Parker Schneider, PLLC
PO Box 1029
Raleigh, NC 27602

Joseph E. Zeszotarski, Jr.
Gammon, Howard, and Zeszotarki, PLLC
P.O. Box 1127
Raleigh, NC 27602
jzeszotarski@ghz-law.com

*Counsel for the Defendant*

G. NORMAN ACKER, III
Acting United States Attorney

By: /s/ John E. Harris
JOHN E. HARRIS
Attorney for United States of America
Assistant United States Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Facsimile: (919) 856-4821
Email: john.harris5@usdoj.gov
N.C. Bar No. 49253